NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

EASTWOOD SHORES PROPERTY )
OWNERS ASSOCIATION, INC., )
          )
   Appellant, )
          )
v.           )  Case No. 2D17-3467
          )
DEPARTMENT OF ECONOMIC )
OPPORTUNITY, )
          )
   Appellee. )
_____)

Opinion filed January 25, 2019.

Appeal from the Department of Economic
Opportunity.

Tiffany A. Grant of Cianfrone, Nikoloff,
Grant & Greenburg, P.A., Dunedin, for
Appellant.

Peter L. Penrod, General Counsel, and
Ross Marshman, Jon F. Morris, and
Christina A. Shideler, Assistant General
Counsels, Tallahassee, for Appellee.

BLACK, Judge.

     In this appeal from a final agency order, Eastwood Shores Property

Owners Association, Inc., challenges the Department of Economic Opportunity's

determination that the Association is not entitled to revive its declaration of covenants and restrictions pursuant to the covenant revitalization statutes, §§ 720.403-.407, Fla. Stat. (2016), because it is not a "homeowners' association" as defined by the Marketable Record Titles to Real Property Act (MRTA), §§ 712.01-.11, Fla. Stat. (2016). We reverse.

I.      Background

In April 1979, Eastwood Shores Condominiums recorded its declaration of covenants and restrictions in the public record of Pinellas County.  The Association is the Florida not-for-profit corporation which maintains and operates various properties and improvements within Eastwood Shores, as stated in Eastwood Shores' declaration and in the Association's articles of incorporation.  The Association is comprised of unit owners in Eastwood Shores.

By operation of MRTA, specifically section 712.02, Eastwood Shores' declaration of restrictions and covenants ceased to govern one or more of the units within the community in 2009.[1]  Pursuant to the covenant revitalization statutes, the Association sought approval from the Department of Economic Opportunity (the Department) of a proposal to revive Eastwood Shores' declaration, submitting the documents required by section 720.406.

---

[1]The units for which the declaration of covenants and restrictions are no longer governing are those in which the "muniments of title," the deeds, do not reference the declaration of covenants and restrictions.  See § 712.03(1) (providing that MRTA does not extinguish "easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title").

The Department denied the proposed revival, finding that "the parcels in the Association are classified as condominiums," that chapter 720 does not apply to the Association, and that therefore the Association may not revive the declaration of covenants and restrictions under the covenant revitalization statutes. The Association sought review of the Department's decision.

Following an administrative hearing, the hearing officer recommended that the Department affirm the denial of the Association's proposal to revive its declaration of covenants and restrictions, finding that the Association did not dispute that it is governed by chapter 718, Florida Statutes (2016), Florida's Condominium Act; that chapter 720, Florida Statutes (2016), Florida's Homeowners' Association Act, does not apply to the Association through application of section 720.302;[2] that the Association "does not fall within the definition of 'homeowners' association' as defined by MRTA" such that section 712.11 of MRTA applies; and that, therefore, the Association is not entitled to seek revival of its declaration under chapter 720.

The Department adopted the recommended order and issued its final order. It is that order which we review.

II.    Analysis

The issue before us is whether the Association, whose members are unit owners within a condominium community, is a "homeowners' association" as defined by MRTA and is therefore entitled to revive its declaration of covenants and restrictions

---

[2]Section 720.302(4) provides, in pertinent part: "This chapter does not apply to any association that is subject to regulation under chapter 718 . . . except to the extent that a provision of chapter 718 . . . is expressly incorporated into this chapter for the purpose of regulating homeowners' associations."

pursuant to sections 720.403-.407.  The issue presented is one of statutory interpretation, and our review is de novo.  Lutheran Servs. Fla., Inc. v. Dep't of Children & Families, 199 So. 3d 286, 288 (Fla. 2d DCA 2015) ("An appellate court may set aside an agency action where the court finds that the agency erroneously interpreted a provision of law and a correct interpretation compels a particular result." (citing Metro. Dade Cty. v. Dep't of Envtl. Prot., 714 So. 2d 512, 515 (Fla. 3d DCA 1998))); see also § 120.68(7)(d), Fla. Stat. (2016).

The Association does not dispute that it is governed by chapter 718 or that section 720.302(4) unambiguously states that chapter 720 applies to associations regulated by chapter 718 only when a provision of chapter 718 has been "expressly incorporated into [chapter 720] for the purpose of regulating homeowners' associations."[3]  The Association maintains, however, that it is eligible to seek revival of its declaration pursuant to the covenant revitalization sections of chapter 720 by virtue of a specific provision in MRTA, section 712.11.[4]

MRTA provides for marketable record title to estates in land "free and clear of all claims" except as to those exclusions expressly set forth.  § 712.02.

---

[3]Interestingly, although the Association's declaration of covenants is titled "Declaration of Covenants and Restrictions for Eastwood Shores Condominiums," the declaration does not reference chapter 718 or its predecessor, chapter 711. Nonetheless, the Association appears to have conceded that although the Association was created in 1979 as a chapter 720 association, it is governed by chapter 718.

[4]The Association alternatively argues that MRTA is unconstitutional as applied to it.  Because the constitutional issue was not sufficiently raised below and our resolution based on the plain language of the applicable statutes renders it unnecessary, we do not address the Association's constitutional question.  See In re Holder, 945 So. 2d 1130, 1133 (Fla. 2006) ("[W]e avoid considering a constitutional question when the case can be decided on nonconstitutional grounds.").

However, MRTA also recognizes that covenants and restrictions can be revived: "[a] homeowners' association not otherwise subject to chapter 720[, the Homeowners' Association chapter,] may use the procedures set forth in [sections] 720.403-720.407 to revive covenants that have lapsed under the terms of [MRTA]." § 712.11. MRTA defines a homeowners' association as (1) "a homeowners' association as defined in [section] 720.301, or [(2)] an association of parcel owners which is authorized to enforce use restrictions that are imposed on the parcels." § 712.01(4). There is no dispute that MRTA effectively terminated the declaration as to certain units within Eastwood Shores. Whether MRTA also permits revival of the declaration is at issue. In that respect, the Association does not contend that it is a homeowners' association as defined in section 720.301; only the latter definition of homeowners' association in section 712.01(4) is at issue.[5] Thus, in order for the Association to be eligible to seek revival of Eastwood Shores' declaration of covenants and restrictions, the Association must be comprised of owners of residential real property which is subject to exclusive ownership.

MRTA does not define "parcel owner"; it does, however, define a "parcel" as "real property which is used for residential purposes that is subject to exclusive ownership and which is subject to any covenant or restrictions of a homeowners'

_____

[5]Had the Association argued that it meets the definition of a homeowners' association as provided by section 720.301, reversal would still be required. Section 720.301(9) defines a "homeowners' association" or "association" as "a Florida corporation responsible for the operation of a community . . . in which the voting membership is made up of parcel owners . . . and in which membership is a mandatory condition of parcel ownership, and which is authorized to impose assessments that, if unpaid, may become a lien on the parcel." For the reasons discussed later in this opinion, the Association is comprised of parcel owners as defined in chapter 720.

association." § 712.01(5).[6]  There is no dispute that Eastwood Shores is a residential community.  Section 718.103, the definitions section of Florida's Condominium Act, defines a condominium "unit" as "a part of the condominium property which is subject to exclusive ownership."  § 718.103(27), Fla. Stat. (2016).[7]  A condominium unit within Eastwood Shores is therefore—by definition—a residential property subject to exclusive ownership.  And because Eastwood Shores' declaration of covenants provides that "[e]very person or entity who is a record fee simple Owner of a Unit . . . shall be a member of the Association," that "[m]embership shall be appurtenant to, and may not

_____

[6]We recognize that the recent amendments to MRTA, effective October 1, 2018, render much of this opinion inapplicable moving forward.  See ch. 2018-55, §§ 2, 5-6, Laws of Fla. (2018).  The amendments include replacing the term "homeowners' association" with "property owners' association," and defining "property owners' association" to include "an association of parcel owners which is authorized to enforce a community covenant or restriction that is imposed on the parcels."  § 712.01(5), Fla. Stat. (2018); ch. 2018-55, § 2. The amendments also eliminate the exclusive ownership requirement in the definition of parcel, instead defining parcel as "any real property that is subject to any covenant or restriction of a property owners' association."  § 712.01(3), Fla. Stat. (2018); ch. 2018-55, § 2; see also §§ 720.3032, Fla. Stat. (2018) (providing that "[a]ny property owners' association desiring to preserve covenants from potential termination after 30 years by operation of chapter 712 may record in the official records of each county in which the community is located a notice specifying . . . [t]he names of the affected subdivision plats and condominiums or, if not applicable, the common name of the community"), .403(3) ("[Part III of this chapter] is intended to provide mechanisms for the revitalization of covenants or restrictions for all types of communities and property associations and is not limited to residential communities.").  We also note that there is no prohibition against successive proposals to revive a declaration of covenants; that is, an association or an organizing committee of parcel owners may seek to revive a declaration of covenants under the 2018 amendments to MRTA regardless of the outcome of prior attempts to revive the declaration.

[7]"Condominium property," in turn, is defined as "the lands, leaseholds, and personal property that are subjected to condominium ownership, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connection with the condominium."  § 718.103(13).

- 6 -

be separated from, ownership of any Unit," and that the Association is authorized to enforce the covenants and restrictions of Eastwood Shores, the Association is a homeowners' association as defined in section 712.01.

Although "[e]ach unit owner owns a proportionate undivided share of the common elements appurtenant to the unit" that he owns, Ocean Trail Unit Owners Ass'n v. Mead, 650 So. 2d 4, 7 (Fla. 1994) (citing § 718.103(10), (24), Fla. Stat. (1987)), the ownership of an undivided share of the common elements does not change that the unit is subject to exclusive ownership and that the association is comprised of unit owners, see § 718.103(2) (defining "association" to include "any entity responsible for the operation of common elements owned in undivided shares by unit owners").  The Association is an association of owners of "real property which is used for residential purposes that is subject to exclusive ownership and which is subject to any covenant or restriction of [the] association."  See § 712.01(4), (5).  That unit owners have nonexclusive ownership of appurtenant condominium property—the common elements—in addition to exclusive ownership of their units does not remove an association made up of those unit owners from the definition of homeowners' association under chapter 712.[8]  There is no requirement in the definitions of homeowners' association or parcel in section 712.01 that parcel owners only own the property which renders them subject to the definitions.  Reading the statutes in such a way as to exclude from MRTA's definition of a homeowners' association an association

_____

[8]"Appurtenances are things belonging to another thing as principal and which pass as incident to the principal thing."  Blok Builders, LLC v. Katryniok, 245 So. 3d 779, 783 n.1 (Fla. 4th DCA 2018) (quoting Chackal v. Staples, 991 So. 2d 949, 955 (Fla. 4th DCA 2008)).  A proportionate undivided interest in the common elements pass as incident to the unit, which may be exclusively owned.

made up of owners of residential property subject to exclusive ownership because those owners also have nonexclusive property ownership interests requires the addition of words, and in this case the addition of a requirement, to the statutes.[9]  The courts are not at liberty to add language to statutes.  Gordon v. Fishman, 253 So. 3d 1218, 1221 (Fla. 2d DCA 2018).

Our reading of MRTA is reinforced by the language of the covenant revitalization statutes themselves.  Section 720.404 provides that "[p]arcel owners in a community are eligible to seek approval from the [Department] to revive a declaration of covenants" if the statutory requirements are met.  Section 720.405 states that "[t]he proposal to revive a declaration of covenants . . . under the terms of this act shall be initiated by an organizing committee consisting of not less than three parcel owners located in the community that is proposed to be governed by the revived declaration."  §

---

[9]Exclusive ownership is not synonymous with ownership in fee simple. Jointly owned land and undivided interests in land may be held in fee.  See In re Estate of Cleeves, 509 So. 2d 1256, 1258 (Fla. 2d DCA 1987) ("[S]everal types of estates or interests, joint or several, may exist in the same fee.  A tenancy in common is one such type of joint interest or concurrent ownership that may exist in a fee." (citation omitted)); Restatement (First) of Property §§ 14, 48 (Am. Law. Inst. 1936); see also Bank One, Dayton, N.A. v. Sunshine Meadows Condo. Ass'n, 641 So. 2d 1333, 1335 (Fla. 1994) ("The declaration provided that the fee simple title to each condominium parcel would include both the unit and an undivided interest in the common elements, that any attempt to separate title to a unit from the common elements appurtenant to that unit would be 'null and void,' and that the common elements shall remain undivided so long as the condominium exists."); Daytona Dev. Corp. v. Bergquist, 308 So. 2d 548, 549 (Fla. 2d DCA 1975) (affirming order "adjudg[ing] appellees to be the owners in fee simple of an undivided interest in the Recreation Unit to the extent of their ownership in the common elements of Harbour Club Condominium No. 2"); Tower House Condo., Inc. v. Millman, 410 So. 2d 926, 930 (Fla. 3d DCA 1981) ("Because a unit owner's undivided share in the parking area is appurtenant to the unit, Section 718.106(2)(a), Florida Statutes, supra, and part of the fee simple, Article V, Declaration of Condominium, supra, the parking area itself is necessarily appurtenant to the unit, even if regulated by the Association.").

720.405(1). Chapter 720 defines "parcel owner" as "the record owner of legal title to a parcel." § 720.301(12). And "parcel" is defined as

> a platted or unplatted lot, tract, unit, or other subdivision of real property within a community, as described in the declaration:
>     (a) Which is capable of separate conveyance; and
>     (b) Of which the parcel owner, or an association in which the parcel owner must be a member, is obligated:
>         1. By the governing documents to be a member of an association that serves the community; and
>         2. To pay to the homeowners' association assessments that, if not paid, may result in a lien.

§ 720.301(11).

By the express language of sections 720.404 and 720.405, eligibility for revival is not determined by the definition of association. The parcel owners are eligible to seek revival of the declaration of covenants and restrictions. And a condominium unit is a parcel under the definition of section 720.301(11): the condominium unit is capable of conveyance separately from the whole of the condominium property in the same way that a chapter 720 parcel is separately conveyed from the whole of the community, compare § 718.103(13) (defining "condominium property"), with § 720.301(3) (defining "community"); the unit owners must be members of the association, per the declaration of covenants and restrictions, see §§ 718.103(2), .111(1)(a); and the failure to pay association assessments may result in a lien on the unit, see §§ 718.103(1), .116(5).[10]

---

[10]A "condominium parcel" is the "unit, together with the undivided share in the common elements appurtenant to the unit." § 718.103(12). "Common elements" are those "portions of the condominium property not included in the units." § 718.103(8). When the unit is conveyed, its appurtenant percentage share of the common elements is simply conveyed with it. §§ 718.103(11), (12), .104, .107(1). Whether the common elements, or the appurtenant undivided share in them, are capable of separate conveyance is not at issue. Cf. § 718.107(2) ("The share in the

- 9 -

Therefore, had the unit owners formed an organizing committee and prepared and submitted the necessary documents to the Department, see § 720.405, the Department would have been unable to deny the proposed revival on the basis that the organizing committee is not eligible to seek revival because it is not subject to chapter 720.

Finally, we agree with the Association that the purposes served by covenant revitalization in residential communities governed by chapter 720 are no less applicable to condominium properties and communities:

> Preserv[ing] existing residential communities, promot[ing] available and affordable housing, protect[ing] structural and aesthetic elements of the[] residential community, and, as applicable, maintain[ing] roads and streets, easements, water and sewer systems, utilities, drainage improvements, conservation and open areas, recreational amenities, and other infrastructure and common areas that serve and support the residential community by the revival of a previous declaration of covenants and other governing documents that may have ceased to govern some or all parcels in the community.

§ 720.403(1).

Because the Department erroneously interpreted the applicable sections of MRTA and chapters 718 and 720, we reverse the order determining that the Association does not qualify as a "homeowners' association" and therefore is not entitled to revive its declaration of covenants. On remand the Department shall review the substance of the Association's proposed revived declaration and supporting documents in accordance with the covenant revitalization statutes.

Reversed and remanded.

---

common elements appurtenant to a unit cannot be conveyed or encumbered except together with the unit.").

BADALAMENTI, J., Concurs.

LaROSE, Chief Judge, Dissents with opinion.

LaROSE, Chief Judge, Dissenting.

I respectfully dissent. The Association was not a "homeowners' association" entitled to use sections 720.403-.407 to revive its lapsed declaration of covenants under MRTA, section 712.11. I would affirm.

We address a narrow issue: whether the Association is a "homeowners' association" comprised of "parcel owners" entitled to revive its declaration of covenants under chapter 712. The Association argues that it is a "homeowners' association" whose members own condominium units that are "parcels" under MRTA. The Department, in contrast, contends that the Association is not a chapter 712 "homeowners' association" because its parcels are comprised of both condominium units and undivided ownership in common elements;[11] thus the parcels are not exclusively owned as required by section 712.01(4).

My disagreement with the majority is one of statutory construction. "The interpretation of a statute is an issue of law that we review de novo." City of Oldsmar v. Trinh, 210 So. 3d 191, 205 (Fla. 2d DCA 2016) (citation omitted). When construing a statute, we first look to the statute's plain language for legislative intent. State v. Burris, 875 So. 2d 408, 410 (Fla. 2004). When the statute's plain language is clear and unambiguous, we look no further. Id. "[T]he statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to

---

[11]The parties refer to the portions of the condominium property not included in the units as the "common area." "Common area" is a term used in chapter 720 for homeowner associations. See § 720.301(2). However, because the parties agree that chapter 718 applies, "common elements" is the appropriate term. See § 718.103(8) (" 'Common elements' means the portions of the condominium property not included in the units.").

legislative intent."  Id. (citing Lee Cty. Elec. Coop., Inc. v. Jacobs, 820 So. 2d 297, 303 (Fla. 2002)).  "If the legislature did not intend the results mandated by the statute's plain language, then the appropriate remedy is for it to amend the statute."  Whitney Bank v. Grant, 223 So. 3d 476, 479 (Fla. 1st DCA 2017) (quoting Overstreet v. State, 629 So. 2d 125, 126 (Fla. 1993)).

Section 712.11 provides that "[a] homeowners' association not otherwise subject to chapter 720 may use the procedures set forth in [sections] 720.403-720.407 to revive covenants that have lapsed under the terms of this chapter."  Section 712.01(4) defines "homeowners' association," in part, as "an association of parcel owners which is authorized to enforce use restrictions that are imposed on the parcels."[12]  Section 712.01(5) defines "parcel" as "real property which is used for residential purposes that is subject to exclusive ownership and which is subject to any covenant or restriction of a homeowners' association."  (Emphasis added.)  Section 712.01(5) unambiguously, and indisputably, requires the "parcel" to be "subject to exclusive ownership."  A person has exclusive ownership when the person has "[o]wnership free from any kind of legal or equitable interest in any one else," or a fee simple title to property.  See Exclusive Ownership, Black's Law Dictionary (6th ed. 1990); see also City of Miami v. Osborne, 55 So. 2d 120, 122 (Fla. 1951) ("A fee simple

---

[12]As the majority recognizes, section 712.01(4) also defines "homeowners' association" as "a homeowners' association as defined in [section] 720.301."  The Association does not argue on appeal that it was a homeowners' association as defined by section 720.301(9).  I see no need for the majority to conclude in footnote 5 that the Association might have been successful on that argument had it made it.  See Manatee Cty. Sch. Bd. v. NationsRent, Inc., 989 So. 2d 23, 25 (Fla. 2d DCA 2008) (explaining that it is inappropriate "to depart from our role as a neutral tribunal and to become an advocate by developing arguments that" an appellant chose not to make).

title assumes that all claims against the lands have been cleared."); Exclusive Ownership, Black's Law Dictionary (10th ed. 2014) ("See fee simple."); Fee Simple, Black's Law Dictionary (10th ed. 2014).

The Association's members own their respective condominium units in fee simple and each unit is subject to exclusive ownership. See § 718.103(27) (defining a condominium "unit" as "a part of the condominium property which is subject to exclusive ownership"). But each member also owns an undivided interest in the condominium's common elements, which the members may use and enjoy. See § 718.103(12), (28). Thus, a member's ownership in the common elements is not free from any kind of legal or equitable interest in any one else.

Moreover, the members cannot convey the ownership in their condominium units separate from their undivided interest in the common elements. See Vill. of Doral Place Ass'n v. RU4 Real, Inc., 22 So. 3d 627, 630 (Fla. 3d DCA 2009) ("Under the plain language of section 718.107, a separate sale of a condominium's common elements is prohibited."). In point of fact, the members own an indivisible and hybrid property interest consisting of exclusive ownership of a condominium unit and a nonexclusive interest in the common elements. See Iezzi Family Ltd. P'ship v. Edgewater Beach Owners Ass'n, Inc., No. 1D16-5878, 2018 WL 3638341, at *2 n.1 (Fla. 1st DCA Aug. 1, 2018) ("The condominium is a hybrid estate in property law whereby an individual obtains fee simple ownership of a unit and shares with other unit owners an undivided interest in the common elements." (quoting Rogers & Ford Constr. Corp. v. Carlandia Corp., 626 So. 2d 1350, 1352 (Fla. 1993))).

The majority ignores the hybrid nature of the condominium parcel. Rather, the majority's cabined analysis rests on the unit owners having exclusive ownership of their respective units. Section 712.11 applies to associations of owners who own real property "subject to exclusive ownership." See § 712.01(4), (5). I cannot agree that section 712.01 extends to an association whose members own an indivisible and hybrid property interest in the units and the common elements. See § 718.103(12), (28); Rogers & Ford Constr. Corp., 626 So. 2d at 1352.

The Association's claim that it was established "in 1979 in such a manner that it would be considered a [c]hapter 720 homeowners['] association" does not compel a conclusion that it is a chapter 712 "homeowners' association," especially given that it concedes it is subject to chapter 718. The Association's comparison of its members' interest in the common elements to hypothetical joint tenants' interest in a lot is also unavailing because it ignores the fact that the members' interest is nonexclusive.

Further, the Association has failed to demonstrate that the statute's plain language would lead to an unreasonable result or a result clearly contrary to legislative intent. The Association argues that the statute's plain language would lead to an absurd result because it would leave the Association without recourse to prevent or cure the extinguishing effects of MRTA. The Association overstates its plight. There is a way to prevent the extinguishment: referencing the declaration of covenants in the condominium deeds. See § 712.03(1) (stating that MRTA shall not extinguish "easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title"); Gary A. Poliakoff & Donna D. Berger, The Reinstatement of Covenants, Conditions, and Restrictions

- 15 -

Extinguished by the Marketable Record Title Act, 79 Fla. B.J. 14, 15 n.4 (2005) (noting that generally MRTA does not extinguish a condominium association's declaration of covenants because condominium deeds reference the declaration, and thus, the declaration "is considered part of the 'root of title' "); see, e.g., Sunshine Vistas Homeowners Ass'n v. Caruana, 623 So. 2d 490, 491-92 (Fla. 1993) (holding that the thirty-one-year-old restriction was preserved when the muniments in the chain of title identified the recorded restriction).

Finally, the Association has not presented, and I have not found, any indication that the legislature intended for section 712.11 to apply to condominium associations.[13] If the legislature wishes to apply section 712.11 to facts like those in this case, "it certainly has the capacity to do so with clarity and specificity."[14] See Clark v. Bluewater Key RV Ownership Park, 197 So. 3d 59, 60, 62 (Fla. 3d DCA 2012) (adopting en haec verba the trial court's order). "[W]e will not expand the statute to include

---

[13]To the contrary, the House of Representatives Staff Analysis noted that the law prior to section 712.11 did not permit nonmandatory homeowner associations to revitalize covenants under chapter 720, and then explained that section 712.11 "would allow homeowners' associations that are not regulated by [chapter 720] to utilize the covenant revitalization procedures available to mandatory homeowners' associations." Fla. H.R. Comm. on Cts. HB 433 (2007), Staff Analysis (Mar. 7, 2007), available at http://www.leg.state.fl.us/data/session/2007/ House/bills/analysis/pdf/h0433a.CTS.pdf. The legislature was concerned that nonmandatory homeowners' associations would not be able to revitalize their covenants. It made no mention of condominium associations when discussing covenant revitalization.

[14]In fact, the legislature amended MRTA during the pendency of this appeal to "expand[] the effect of MRTA laws on preservation and revitalization of covenants or restrictions to cover commercial associations." Fla. H.R. Comm. on Civ. Justs. & Claims Subcomm. HB 617 (2018), Staff Analysis (Feb. 1, 2018), available at https://www.flsenate.gov/Session/Bill/2018/617/Analyses/ h0617e.JDC.PDF; see also ch. 2018-55, §§ 2, 5-6, Laws of Fla. (2018).

language the [l]egislature did not enact."  See Brindise v. U.S. Bank Nat'l Ass'n, 183 So. 3d 1215, 1219 (Fla. 2d DCA 2016).

I would affirm the Department's final order.